## WISNER v. WISNER.

DIVORCE—CRUELTY—NONSUPPORT—EVIDENCE—SUFFICIENCY.

On a bill by a wife for divorce on the grounds of cruelty and nonsupport, evidence examined, and *held*, insufficient on either ground to support a decree.

Appeal from Wayne; Rohnert, J. Submitted June 18, 1907. (Docket No. 125.) Decided July 15, 1907.

Bill by Anne Eliza Wisner against Ralph E. Wisner for a divorce. From a decree for complainant, defendant appeals. Reversed, and bill dismissed.

*Rufus G. Lathrop*, for complainant.

*Joseph R. Nolan*, for defendant.

MOORE, J. This is a bill for divorce upon the ground of extreme cruelty. The defendant appeared and answered the bill of complaint. He denied most of the averments, and set up an explanation of some of the others. Proofs were taken. At the time of settling the decree proposed by the solicitor for complainant, defendant objected for the following, among other, reasons:

(1) That the proofs utterly fail to make out a case on the ground of extreme cruelty.

(2) That the bill of complaint does not allege a cause of divorce for nonsupport under 3 Comp. Laws, § 8622.

(3) That the court was without authority to decree permanent alimony, as there was nothing in the bill of complaint to indicate that property interests were involved, and no subpoena with an underwriting to that effect served on defendant.

The circuit judge overruled the objections and granted a decree of divorce and for alimony. The case is brought here by appeal.

Did the proofs make out a case of extreme cruelty? The cruelty alleged is that defendant is a confirmed gambler; that he stayed away from home nights, visiting gambling houses; that he left complainant and her child for long periods without money or means to satisfy their needs; that defendant took complainant's money, and pawned her jewelry, and lost the same gambling; that he has utterly failed and neglected to provide complainant with many of the necessities of life.

The record discloses that the parties were married in October, 1902. A child was born to them, who is now nearly four years old. At the time of their marriage defendant gambled some, and that fact was known to his wife. The habit grew upon him, so that he neglected his business. He used some of complainant's money, and pawned some of her jewelry, to indulge his taste for gambling. The wife sometimes knew he did this, and we think the record discloses that she did not wholly disapprove of it. They continued to live together until the summer of 1905, when defendant went to New Mexico to commence life anew. We think the record fairly discloses that, during the last year the parties lived together, defendant did no gambling, except in his own house or in the houses of his friends, in parties planned by his wife or those given in return for parties planned by her. In these games the complainant and her lady friends joined, and the amounts at stake were trifling. The complainant says she planned these parties to keep her husband away from gambling resorts. Defendant says his going to New Mexico was mutually agreed upon, and that his wife was to follow him when he sent for her; that he did send for her, and sent her money to come; and that she declined to come. The amount of money sent was $55. The defendant says that would have been ample. It was shown by a railroad ticket agent in Detroit that the railroad fare and sleeping berth would cost $50.80, and the trip would take 48 hours if the trains made connection, and the solicitor for complainant argues that the sum

sent was not enough. The complainant telegraphed her husband, "Have decided not to come," but did not suggest that the reason why was because he had not sent her money enough. The testimony of the complainant shows she was friendly with her husband when he went to New Mexico, and accompanied him to the train. It was arranged that she and the child should stay with defendant's father and mother while he was establishing himself in New Mexico.

On the cross-examination of complainant the following occurred:

"*Q.* Your sister resides out there?

"*A.* Yes, sir.

"*Q.* Wasn't it understood that you were going to Raton and make a home there?

"*A.* No, sir.

"*Q.* How did you come to send him that telegram, 'I have decided not to come?'

"*A.* I said I would consider going down there if he sent me the money and returned my diamond ring, and he failed to do that later on.

"*Q.* You did send him the telegram, 'I have decided not to come?'

"*A.* Yes, sir.

"*Q.* And before that you had agreed to meet him at Raton?

"*A.* Only under two conditions.

"*Q.* And there was nothing to it about that?

"*A.* Yes, sir.

"*Q.* What were the conditions?

"*A.* He did not return me my diamond ring, and he did not give me enough money to come."

In addition to this, she stated that she did not want to take the chances of going so far until she knew her husband could take care of her. The husband claims he was able to take care of her, and would have been glad to do so if she had come to him, and would be glad to support her now if she would live with him.

We have already spoken of the fact that she did not suggest to him he had not sent her money enough to pay

her railroad fare.   It is claimed he did not send her money enough to care for her and the child, either before he went to New Mexico or afterwards, and that after he went to New Mexico her brother supported complainant.   Whatever may have been the derelictions of defendant before he went to New Mexico, it is clear complainant did not regard them as causes for not living with him, and made no suggestion that she intended to leave him.   It is a fair inference from the testimony that she intended to join him in New Mexico, and we have no doubt, had she written him, when she sent the telegram before mentioned, that he had not sent her money enough to enable her and her child to come in comfort, that he would have sent her more.

Mr. Wisner went to New Mexico in June, 1905.   October 14th of the same year Mrs. Wisner telegraphed him, "Have decided not to come."   She filed her bill of complaint in 1906.   It is urged as a ground of cruelty that Mr. Wisner sent his wife but $55 after he went to New Mexico.   It already appears for what purpose the $55 was sent.   The record fails to show that Mrs. Wisner asked him to send her more money.   It also fails to show a condition of affairs that amounts to extreme cruelty or nonsupport in the eyes of the law.   It is not necessary to discuss the other propositions.

The decree is reversed, and bill dismissed, but without costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.